**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| RONNIE WATTS (N-83940), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 C 50337 |
| | ) | |
| DR. LARRY SY, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

*Pro se* Plaintiff Ronnie Watts is a prisoner currently in the custody of the State of Illinois. In April 2023, Mr. Watts underwent a surgical procedure to have a pacemaker implanted in his chest. A few days later, the infection site became infected, and the pacemaker had to be replaced in a second surgery in May 2023. In this lawsuit, Watts alleges that the need for the second surgery arose because prison officials failed to ensure that he was timely seen for a follow-up appointment, a failure he contends demonstrates deliberate indifference to a serious medical need. Watts originally brought this action under 42 U.S.C. § 1983 against numerous defendants associated with the Illinois Department of Corrections ("IDOC"), and Wexford Health Sources ("Wexford"), the third-party contractor that Illinois uses to provide medical care to prisoners. Several of these defendants were dismissed from this lawsuit, leaving Defendant Dr. Larry Sy, the medical director at Dixon Correctional Center, as the sole defendant. Dr. Sy has moved for summary judgment. As explained below, this motion is granted.

## BACKGROUND

### I. Factual Background

The facts laid out below are taken from the parties' respective Local Rule 56.1 filings, as well as the record evidence submitted by both parties.[1] As it must at summary judgment, the

---

[1] The facts set forth here are presented in the parties' statements of fact pursuant to this court's Local Rule 56.1. Dr. Sy's Local Rule 56.1 Statement of Material Facts is cited here as

court takes disputed facts in the light most favorable to the non-moving party. *See Arce v. Wexford Health Sources Inc*., 75 F.4th 673, 678 (7th Cir. 2023).

At the time of the events giving rise to this lawsuit, Mr. Watts was incarcerated at Dixon Correctional Center, a facility operated by the Illinois Department of Corrections ("IDOC"). In April 2023, Watts began experiencing bradycardia—a form of abnormal heart rhythm—and chronic heart failure. (DSOF [71] ¶¶ 15–16.) On April 19, 2023, he was transported from Dixon to KSB Hospital, where doctors diagnosed him with a "Mobitz type II AV block," a disorder of the heart's electrical conduction system. (*Id.* ¶¶ 15–16.) He was admitted to the hospital, and a cardiologist determined that he needed a pacemaker. (*Id.* ¶¶ 16, 17.) Watts consented to surgery, and on April 20, 2023, an unidentified surgeon at KSB implanted a pacemaker into Watts's chest (*id.* ¶¶ 19, 69.)

Mr. Watts was discharged the following day and returned to Dixon. (*Id.* ¶ 25.) The surgeon at KSB left the pacemaker site covered with "Steri-strips" and gauze, and prescribed antibiotics to proactively "prevent infection." (*Id.* ¶¶ 25–26.) Mr. Watts's discharge instructions included: (1) a directive to "follow up with healthcare provider within ten (10) days to evaluate the incision cite"; and (2) a notation that the pacemaker "will need to be checked in 2 months" and monitored "either through UIC or via electronic remote download." (Def.'s Exhibit E, Medical Records [72-12] at 19.) An unidentified KSB medical provider told Watts to leave the dressing on his incision site until he saw "the next doctor." (Watts Dep. [72-11] at 54:11–14; DSOF [71] ¶ 27.)

On April 24, 2023—four days after his surgery—Watts met with Defendant Sy. (DSOF [71] ¶ 28.) Both parties agree that Dr. Sy has experience diagnosing, treating, and referring patients who complain of chest pain, infections, and bradycardia, and has "extensive clinical experience in diagnosing and treating patients with similar presentations as [Watts] pertaining to his pacemaker." (*Id.* ¶¶ 2, 5, 6; *see also* Pl.'s Resp. to DSOF [78] ¶¶ 2, 5, 6.) What happened at

---

"DSOF [71] ¶ ___." Watts's Response to Defendant's Local Rule 56.1 Statement is cited here as "Pl.'s Resp. to DSOF [78] ¶ ___."

the appointment is, however, disputed.  Defendant claims that Dr. Sy reviewed Watts's discharge instructions, noted that the pacemaker site was covered in steri-strips and gauze, did not remove or disturb the dressing (per the discharge instructions), and concluded "there was no indication of any infection or other issue related to [Watts's] pacemaker," based in part on Watts's "lack of complaints."  (DSOF [71] ¶¶ 28, 29.)  Plaintiff acknowledges he was seen by Dr. Sy, but characterizes this visit as lasting for "a minute at the most," as is typical for a follow-up "after an outside hospital visit."  (Pl.'s Resp. to DSOF [78] ¶¶ 28–33.)  He also claims that he did, in fact, have "complaints" during the visit with Dr. Sy, but he cites to no material in the record and does not explain what those complaints entailed.[2]  (*Id.* ¶¶ 29, 34–35.)  Dr. Sy ordered a follow-up visit, and an appointment at UIC Hospital was scheduled for May 4, 2023—13 days after his discharge from KSB.  (DSOF [71] ¶ 41.)

The appointment did not happen as scheduled.  The May 4 appointment "was cancelled by Dixon due to a lack of security personnel and was rescheduled for May 9, 2023." (*Id.*)  Sy did not cancel the appointment, nor was he aware that the appointment had been cancelled.[3]  (*Id.* ¶ 42.)  Dr. Sy claims, without meaningful dispute from Watts, that his only role in appointment

---

[2]     This is a recurring problem with Plaintiff's summary judgment materials.  Local Rule 56.1 requires a plaintiff opposing summary judgment to submit a detailed response to the movant's statement of facts that either "admit[s] the asserted fact, dispute[s] the asserted fact, or admit[s] in part and dispute[s] in part the asserted fact."  Local Rule 56.1(e)(2).  Importantly, the plaintiff must "cite specific evidentiary material that controverts the fact[.]"  *Id.* (e)(3).  Facts "may be deemed admitted if not controverted with specific citations to evidentiary material."  *Id.*  Plaintiff was notified of this requirement, but his Local Rule 56.1 statement is almost entirely devoid of citations or even references to evidentiary material.  This makes it very difficult to determine whether a material dispute of fact exists in this case.  Recognizing that Mr. Watts is *pro se*, the court will credit Plaintiff's assertions to the extent that he would be able to testify to them, but does not credit any other unsupported factual assertions.  *See Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material.").

[3]     Watts does not dispute this fact, asserting only that "Dr. Sy was the medical director at Dixon Prison at all times relevant to this complaint and it is this Med. Dir. whi [sic] is ultimately responsible for [Watts's] healthcare including but not limited to any scheduling and ensuring the proper and complete healthcare for this inmate."  (Pl.'s Resp. to DSOF [78] ¶¶ 41–50.)

scheduling was "informing the administrative individual the time frame and reason for" the appointment. (*Id.* ¶ 43.) The appointment was rescheduled to May 9, 2023. (*Id.* ¶ 53 (undisputed).)

Sometime between the appointment with Dr. Sy on April 24, 2023, and Watts's arrival at UIC to May 9, 2023, Watts reported to a prison nurse identified only as "Nurse H" that the Steri-strips were coming loose. (*Id.* ¶ 36.) The nurse performed a dressing change, but Dr. Sy was not present for the change, had not ordered it, and was not aware that the nurse had changed Watts's dressing. (*Id.* ¶¶ 36–37.) On April 27, 2023, and May 1, 2023, Watts was seen at the Dixon Healthcare Unit for health issues unrelated to his pacemaker. (*Id.* ¶ 40.) Defendant claims that Watts "voiced no concerns regarding his pacemaker or incision site." (*Id.*) Watts disagrees, stating that he "voiced multiple complaints and concerns to any in healthcare," but, again, cites to no evidentiary material in support, and does not say (1) to whom these "complaints and concerns" were made, (2) what they entailed, or (3) during which appointments they were made. (Pl.'s Resp. to DSOF [78] ¶ 40.) Plaintiff does not dispute that Dr. Sy was not present during any of these appointments. (DSOF [71] ¶ 40 (undisputed in relevant part).)

On May 9, 2023,[4] Watts was seen at UIC Hospital for his follow-up appointment. He was asymptomatic at the time, and believed that the purpose of the appointment was to "verify the device was functioning properly." (*Id.* ¶¶ 54–58.) He "felt the pacemaker was properly functioning due to his lack of symptoms."[5] (*Id.* ¶ 57.) When a physician at UIC Hospital removed the dressing

---

[4]     The medical records submitted by Defendant as exhibits also reference a neurology appointment that took place at UIC Hospital on May 8, 2023. The notes from this visit make no mention of an complaints concerning infection symptoms, Watson's having spent 30 minutes "face to face" with him. (*See* Medical Records [72-12] at 37–41.) The provider's lengthy notes make no mention of any infection symptoms; the report was that "today, [the patient] notes that he is doing well overall." *Id.* at 38.

[5]     Plaintiff ostensibly disputes this, claiming that he made complaints of "pain and suffering and symptoms" to unspecified medical providers, and that his "cries fell on deaf ears." (Pl.'s Resp. to DSOF [78] ¶¶ 54–59.) Again, he does not provide any details, or cite to any evidence, supporting his contention that he complained about symptoms associated with his

4

over the incision site, however, the physician informed Watts that he had a localized infection at the area of the pacemaker pocket. (*Id.* ¶¶ 59, 60; *see also* Medical Records [72-3] at 357.) Watts was admitted to UIC Hospital, where he remained for approximately 17 days during which time the infection was treated and a new pacemaker was implanted. (*Id.* ¶ 66.)

Dr. Sy did not see Watts between April 24, 2023, and May 9, 2023. (*Id.* ¶ 63.) Defendant asserts—and Plaintiff does not dispute—that if Dr. Sy had seen Watts for any reason, the visit would have been noted in Watts's medical records. (*Id.* ¶ 65.)

## II.    Procedural History

This lawsuit followed. Watts's operative complaint alleges that the pacemaker he received on April 2023 had to be replaced in May 2023 due to the infection. (Compl. [8].) And he attributes the cause of the infection and need for a second surgery to Dr. Sy's failure to ensure that he timely attended a follow-up appointment. Dr. Sy moves for summary judgment [69], arguing that (1) there is no indication that Watts was experiencing a serious medical need when Sy saw him on April 24, 2023; (2) there is no evidence that Sy acted with the requisite level of culpability; (3) there is no "verifying medical evidence" that evaluation of the pacemaker site before May 9, 2023, would have changed Watts's outcome; and (4) there is no evidence that Sy's treatment plan caused or contributed to the infection in the pacemaker pocket. (Def.'s Mem. [70] at 5–12.)

## LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Whitaker v. Dempsey*, 144 F.4th 908, 916 (7th Cir. 2025) (quoting FED. R. CIV. P. 56(a)); *see also Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 614 (7th Cir. 2022). "A genuine issue of material fact exists only if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

---

pacemaker. Nor does he describe those symptoms or suggest that they were consistent with infection.

(1986)).  In considering a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party and draws "all reasonable inferences in [its] favor." *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 661 (7th Cir. 2016).  It does not "weigh evidence or make credibility determinations." *Zemlick v. Burkhart*, 164 F.4th 1004, 1010 (7th Cir. 2026).

Once a motion for summary judgment has been properly supported, the opposing party must produce affirmative evidence showing there is more than a "metaphysical doubt as to the material facts." *Whitaker*, 144 F.4th at 917 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).  An opposing party must produce affirmative evidence raising a genuine issue for trial—"mere speculation or conjecture cannot defeat summary judgment." *Id.* at 920.  Because Mr. Watts is self-represented, the court construes his filings liberally, but must hold him to the same "substantive legal rules as represented parties." *Balle v. Kennedy*, 73 F.4th 545, 553 (7th Cir. 2023).

## DISCUSSION

The Eighth Amendment protects prisoners in state custody from "cruel and unusual punishments." U.S. CONST. amend. VIII. Because the "unnecessary and wanton infliction of pain" is a cruel and unusual punishment, state governments must provide medical care to prisoners in their custody. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).  The Constitution does not require perfect care, however; the failure to treat a condition runs afoul of the Constitution only when it amounts to "deliberate indifference to serious medical needs of prisoners." *Brown v. LaVoie*, 90 F.4th 1206, 1211–12 (7th Cir. 2024) (quoting *Estelle*, 429 U.S. at 104).

Mr. Watts alleges that Dr. Sy was deliberately indifferent to his medical needs.  When evaluating deliberate indifference claims, the court applies a two-step test: (1) the prisoner must have an objectively serious medical condition, and (2) the defendant must be subjectively aware of and consciously disregard that condition. *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir.

6

2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The court examines each element, in turn, below.

## I.      Serious Medical Need

A medical condition is objectively serious if it "has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would perceive the need for a doctor's attention." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020) (internal quotation marks and citation omitted); *see also Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Watts has established this first element of his claim. It is undisputed that Watts was diagnosed with an infection following his surgery, and a reasonable jury could certainly find a post-surgical infection to be serious enough to require "a doctor's attention." *Donald*, 982 F.3d at 458. Several district courts in the Seventh Circuit have found that a prisoner's need for post-surgical wound care can constitute a serious medical need. *See, e.g.*, *Brown-Turner v. Loyd*, No. 20-cv-684-RJD, 2023 WL 4181234, at *3 (S.D. Ill. June 26, 2023) (recognizing at summary judgment that need for dressing changes for laceration constitutes serious medical need); *Pierce v. Luking*, No. 24-cv-01271-SMY, 2024 WL 4708043, at *2 (S.D. Ill. Nov. 7, 2024) (explaining in screening order that "Plaintiff's post-surgical pain and need for wound care were objectively serious medical conditions[.]").

The court turns to the second element.

## II.     Deliberate Indifference

The second prong is more exacting—it requires an inquiry into the defendant's "state of mind." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 299 (1991)). To advance to trial, a plaintiff "must provide evidence" that the defendant "actually knew of and disregarded a substantial risk of harm." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (quoting *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016)). Negligence, or even gross negligence, is not enough to establish deliberate indifference. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021).

Watts argues that Dr. Sy's deliberate indifference to his infection led to a second surgical operation that would otherwise be unnecessary. (Opp'n [77-1] at 2–3.) He makes two arguments in support of this claim: First, he argues that the "infection at the Pacemaker site was obvious," suggesting that Dr. Sy must have been aware of the infection and deliberately chose not to do anything about it. (*Id.* at 4.) Second, he accuses Dr. Sy of "blatantly" ignoring the "aftercare" instructions of his first surgeon. (*Id.*) Watts cannot establish deliberate indifference because Sy saw Watts on only one occasion—April 24, 2023—and "there was no risk of harm" at that time. (Def.'s Mem. [70] at 6–9.) Dr. Sy responds that he did not "ignore" the discharge instructions, but instead saw no "indication to deviate from" them because Watts did not exhibit any symptoms, or make any complaints, consistent with an infection. (*Id.* at 7.)

The court agrees that there is no basis for a finding of liability on the part of Dr. Sy. There is simply no evidence that could support an inference that Dr. Sy knew of, but deliberately disregarded, Watts's chest infection. *See Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (explaining that deliberate indifference requires "something approaching a total unconcern for the prisoner's welfare in the face of serious risks"). For one, Dr. Sy only saw Watts once—on April 24, 2023—and there is no evidence that Watts had an infection at that time. According to Dr. Sy's notes from the appointment, he did not examine the direct incision due to the presence of the steri-strips and gauze, and he did not see any obvious signs of infection. There is no indication, in the medical records, that Watts complained of symptoms that might be suggestive of infection. Quite obviously, Dr. Sy could not have been aware of a condition that did not exist at the time of the appointment.

But even if the court assumes that the incision site was infected at the time of the April 24 appointment, there is no evidence in the record that Dr. Sy was aware of that fact. As noted, there is no evidence that Watts was experiencing any symptoms at the time of the April 24 appointment. While Watts does make the single vague assertion that he "convey[ed] . . . to Dr. Sy of my pain and suffering and symptoms," (Pl.'s Resp. to DSOF [78] ¶¶ 54–59), he does not

explain what those symptoms were, where on his body the pain was located, or anything else suggesting that he made Dr. Sy aware that he might have had an infection at the surgical site. The court also notes that Watts's claims are somewhat inconsistent in this respect: Watts testified that he had no reason to believe he had an infection before May 9, 2023 (*see* Watts Dep. [72-11] at 68:15–17, 70:7–9; 92:1–17), and stated in his summary judgment briefing that Sy was not present when he complained to unspecified medical staff about "pain and suffering." (*See* Opp'n [77-1] at 4 ("Dr. Sy did not hear this writer[']s many complaints of pain and suffering.").) The court will assume that it would have been prudent for Dr. Sy to remove the dressings himself and inspect the incision site visually. Perhaps his failure to do so might be deemed negligent. But the Eighth Amendment only proscribes "grossly inadequate medical care," and Watts offers no evidence that Dr. Sy's conduct was so far below the ordinary level of care as to constitute a constitutional violation. *Gabb v. Wexford Health Sources*, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019).

Watts also claims that Dr. Sy's failure to strictly adhere to another doctor's aftercare instructions constitutes deliberate indifference. It is undisputed that Watts's discharge instructions from KSB Hospital recommended evaluation of his incision within ten days, and that Sy did not examine it during that period. Instead, Watts was scheduled for a follow-up appointment at UIC Hospital on May 4, 2023 (ten days after his visit with Dr. Sy, and thirteen days after he was discharged from the hospital). While thirteen days is longer than ten, the court is not convinced that a three-day delay in a post-surgery follow-up appointment constitutes cruel and unusual punishment. Again, deviation from another doctor's instructions might be negligence, or even gross negligence, but it is not deliberate indifference. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between . . . two medical professionals[] about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation."); *Allen v. Frank*, 246 F. App'x 388, 391 (7th Cir. 2007) (explaining that medical professional's treatment decision does not rise to an Eighth Amendment violation "unless the medical treatment was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the

9

prisoner's condition" (internal quotations omitted)); *see also Hatcher v. Jones*, No. 25-1432, 2026 WL 268250, at *2 (7th Cir. Feb. 2, 2026) (affirming summary judgment for medical professionals who did not follow specialist's recommendations for wound care and wound became infected). And, again, Watts offers no evidence suggesting that Dr. Sy's actions were anything other than the exercise of his medical judgment.

Likewise, while it is true that Watts's follow-up was delayed a second time—from May 4 to May 9—due to security reasons, there is no evidence that Dr. Sy was aware of that fact, and Watts does not meaningfully dispute that "Dr. Sy has no involvement in the scheduling of patient appointments or coordinating patient transports outside Dixon." (DSOF [71] ¶ 42.) This therefore does not support a deliberate indifference claim against Dr. Sy.

Much of Watts's summary judgment papers are devoted to arguments that Dr. Sy failed to adequately supervise other medical practitioners at Dixon. For example, his Local Rule 56.1 statement repeatedly alleges that "Dr Sy was the medical director at Dixon Prison" and thus was "ultimately responsible for this writer[']s healthcare including . . . any scheduling and ensuring the proper and complete healthcare for this inmate." (Pl.'s Resp. to DSOF [78] ¶¶ 41–50.) This does not defeat summary judgment, however. There is no vicarious liability in lawsuits brought under § 1983, *see Bostic v. Murray*, 160 F.4th 831, 840 (7th Cir. 2025) ("[A] supervisor is liable for money damages only for his [] own misconduct"), so any theory of damages premised on the actions of a subordinate cannot proceed.

## CONCLUSION

Defendant's motion for summary judgment [69] is granted. Final judgment will be entered in Defendant's favor.

ENTER:

Dated: June 24, 2026

_____
REBECCA R. PALLMEYER
United States District Judge

10